UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-160-H

PATRICIA A. RAGLAND McGEHEE, et al.                             PLAINTIFFS

V.

U.S. ARMY CORPS OF ENGINEERS, et al.                            DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

The Commonwealth of Kentucky has successfully completed condemnation proceedings on Plaintiffs' home and farm to construct a new road, the Ring Road Extension Project (the "Project"). To save their home, Plaintiffs have filed this action alleging that Defendants failed to consider the historical nature of their property and possible impacts on it, and that these failures violate the provisions of the National Historic Preservation Act ("NHPA"), which are intended to protect such structures.

Defendants are the U.S. Army Corps of Engineers (the "Corps"), Lieutenant General Robert L. Van Antwerp (Commander and Chief of Engineers, U.S. Army Corps of Engineers), Colonel Keith A. Landry (District Commander, U.S. Army Corps of Engineers, Louisville District), Federal Highway Administration, Victor Mendez (Federal Highway Administrator), Transportation Cabinet of the Commonwealth of Kentucky, and Mike Hancock (Secretary, Kentucky Transportation Cabinet).

Of immediate concern, Plaintiffs have moved for a preliminary injunction based

primarily on alleged violations of the NHPA.[1] While Plaintiffs generally question the wisdom of building this road and the chosen route, this Court is without authority to evaluate those decisions; state courts have covered these issues. Here, Plaintiffs narrowly focus their claim for injunctive relief upon their entitlement to an evaluation required under Section 106 of the NHPA (the "Section 106 Process"). Concededly, Defendants did not implement or provide the full Section 106 Process. To obtain their desired relief, Plaintiffs must show that they were entitled to that process.

## I.

The material facts are fairly well known. On June 29, 2006, the Army Corps of Engineers approved construction of several stream crossings as part of the Ring Road Extension Project, a project which would connect Highway 62 to the Western Kentucky Parkway. The Corps' approval occurred under Nationwide Permit No. 14 ("NWP No. 14"), as provided for by Section 404 of the Clean Water Act. The Project is planned to run through Gaither Springs Wellhead Protection Area and the Plaintiffs' farm. Plaintiffs' property (the "Property") was listed in the National Registry of Historic Places in February of 2008, and had been recognized as potentially eligible for listing as early as 2004.

On August 21, 2006, the Commonwealth commenced a condemnation action against the Property, which ultimately proved successful. The condemnation was upheld on appeal in 2008. Plaintiffs have moved to alter, amend or vacate the order delivering possession of the Property to the State and authorizing eviction, and this motion remained pending when Plaintiffs filed this

---

[1] Plaintiffs have also filed two motions for summary judgment, one against the Federal Defendants and one against the State Defendants.

action.² Meanwhile, construction on the Project began. The Project is divided into two segments; the first segment is incomplete but a portion of it opened to traffic in August of 2009. Within the first segment, Defendants have constructed Bacon Creek and Valley Creek Bridges and one culvert. Valley Creek Bridge nearly abuts Plaintiffs' Property. Construction on the second segment, which will run through the Plaintiffs' property and would result in demolition of their home and other structures, has not begun.

Because NWP No. 14 expired prior to construction commencing on the second segment of the Project, the state needed re-authorization. As part of this process, the state Transportation Cabinet wrote to the Kentucky State Historic Preservation Officer ("SHPO") on behalf of the Corps pursuant to Section 106 seeking review of the two unbuilt culverts originally authorized under the first issue of NWP No. 14. The SHPO stated some objections, sentiments which the National Trust for Historic Preservation echoed. The Transportation Cabinet responded by altering the design of the Project to replace the culverts with two clear span bridges, which had the effect of eliminating the need for authorization by a renewed NWP No. 14.

The structure of primary interest here is the Valley Creek Bridge because its location virtually requires the removal of Plaintiffs' historic home. However, the original design of the Valley Creek Bridge did not require a federal permit and, therefore, was not under the applicable NWP No. 14 approval. Later, during construction of the bridge, the Transportation Cabinet did request and obtain a temporary construction permit under Nationwide Permit No. 33 ("NWP No. 33"). This sequence of events becomes important in the Court's analysis.

---

²Plaintiffs also filed an action in state court against the Transportation Cabinet for violation of the Kentucky Model Procurement Act in taking of the Plaintiffs' right of way. Plaintiffs' claim was dismissed in 2009 because they lacked standing and the court lacked jurisdiction, and the appeal of this decision was pending when this action was filed.

The current status is that the Valley Creek Bridge is completed. Defendants wish to continue the next phase of construction which is the road extension from the bridge through Plaintiffs' farmhouse to the Western Kentucky Parkway. Pending this Court's consideration of these issues, Defendants have delayed letting the contracts for the final phase of the Project.

**II.**

Plaintiffs bring numerous claims against the state and federal agencies who have planned, approved and advanced the Project. Their claims for injunctive relief focus upon Defendants' alleged failure to comply with Section 106 of the NHPA.[3] The Federal and State Defendants raise a host of jurisdictional and procedural defenses, some of which would require serious consideration. Parties also raise issues concerning the standard of this Court's review. For instance, Federal Defendants contend that Plaintiffs' NHPA claims must be brought through the Administrative Procedure Act ("APA") and that the Court must, therefore, review their actions under an abuse of discretion standard. Plaintiffs argue, and State Defendants concur, that there may be a private cause of action under the NHPA. If there is a private cause of action, then Defendants' actions do not receive deferential review. *Comm. To Save Cleveland's Huletts v. U.S. Army Corps of Eng'rs*, 163 F.Supp.2d 776, 789 (N.D. Ohio 2001).

To obtain a preliminary injunction,[4] Plaintiffs must show that: "(1) they have 'a strong

---

[3] Plaintiff also brings claims under the National Environmental Policy Act ("NEPA"), the Clean Water Act ("CWA"), the Safe Drinking Water Act ("SDWA"), and the Uniform Relocation Assistance and Real Properties Acquisition Act ("Uniform Act"), as well as several other claims. However, the Court understands the Uniform Act to require compliance with NEPA and NHPA. NEPA itself requires compliance with NHPA. Furthermore, NWP No. 14 was issued under the authority provided for by the CWA, and the conditions of NWP No. 14 require compliance with the NHPA. Therefore, the root of most of Plaintiffs' claims and the majority of evidence presented relates to alleged violations of Section 106 of the NHPA.

[4] Plaintiffs seek to enjoin eviction and any authorization or re-authorization of permits related to the Project. State Defendants claim this Court cannot enjoin eviction as such an injunction would amount to a stay of state court proceedings ordering eviction in violation of 28 U.S.C. §2283. This Court can certainly enjoin construction or

likelihood of success on the merits'; (2) they would 'suffer irreparable injury' if the injunction is not issued; (3) the injunction would not cause 'substantial harm to others'; and (4) 'the public interest would be served by issuance of the injunction.'" *Albarado v. Ky. Racing Comm'n,* 496 F.Supp.2d 795, 803 (W.D. Ky. 2004) (quoting *ACLU of Ky. v. McCreary County,* 354 F.3d 438, 445 (6th Cir. 2003)). The first factor requires the Court to consider whether Defendants have complied with the NHPA's requirements for a Section 106 Process. This singular substance issue could decide the pending motion.[5]

**III.**

Entitlement to the Section 106 Process first requires the existence of a "federal undertaking." 16 U.S.C. §470f. The Project is not paid for with federal money. However, this is not an absolute requirement. An activity or project which requires "a Federal permit, license or approval" may also constitute such an undertaking. *See* 16 U.S.C. § 470 w(7)(C). The parties argue about the scope of the federal undertaking and whether all or any part of the Project constitutes a federal undertaking.

Plaintiffs argue that, under *Sw. Williamson Cnty. Cmty. Ass'n, Inc. v. Slater*, 243 F.3d 270 (6th Cir. 2001), the entire Project is one federal undertaking.[6] A project as a whole may

---

permitting; while either of these injunctions might have the effect of enjoining eviction, the rational consequences of permissible court action do not change the powers of the Court. Regardless of the activity Plaintiffs seek to enjoin, the motion for injunction will be denied because Plaintiffs are not likely to succeed on the merits.

[5]Only the State Defendants argued the likely success of the merits in their opposition to preliminary injunction. The Federal Defendants claimed that the injunctive relief was sought only against the State Defendants and that they, therefore, would take no stance on the preliminary injunction. However, the actions of the Federal Defendants are pivotal in determining the likelihood of success on the merits and they discussed extensively at the hearings and provided supplemental materials addressing the merits.

[6]The relevance of the entire project being a "federal undertaking" is that the McGehees' home and supporting structures are clearly in the path of the road, and therefore the federal undertaking. If a historic property is within the federal undertaking, then it is most definitely due the Section 106 Process. Though the McGehees may be due the 106 Process even if the entire project is not a "federal undertaking," the McGehees have the more difficult

5

constitute a "federal undertaking" "(1) when the non-federal project restricts or limits the statutorily prescribed federal decision-makers' choice of reasonable alternatives; or (2) when the federal decision-makers have authority to exercise sufficient control or responsibility over the non-federal project so as to influence the outcomes of the project." *Id*.[7] The Court agrees with Plaintiffs that the Project must be considered as one, even though it was subsequently divided into two sections. However, that does not necessarily mean that the Project as a whole constitutes either a "major federal action" or a "federal undertaking."

The Project was constructed with state funds[8] and under even the original design, the NWP No. 14 permit applied to only several crossings. The Court is not convinced that federal permitting of the first two of five stream crossings in a two mile project amounts to "sufficient control or responsibility over the non-federal project so as to influence the outcomes of the project." *Id*.[9] Even the broadest definition of a federal undertaking could not contemplate the entire Project as a federal undertaking. In these circumstances, the Court can find no authority suggesting that the entire Project be deemed a federal undertaking.

Notwithstanding this conclusion, the issuance of individual federal permits does have consequences under the NHPA. Because an "undertaking" includes "a project, activity, or

---

job of proving that their home and structures are close enough to whatever part of the Project constitutes a "federal undertaking" that they are due a full 106 Process.

[7]This case actually discusses the criteria for determining when a project is a "major federal action," as required for liability under NEPA. However, the criteria for a "major federal action" is the same as the criteria for a "federal undertaking." *Harrison v. U.S. Dept of Army*, No. 3:08CV-105-H, 2009 WL 3347109, at *6 (W.D. Ky. Oct. 14, 2009).

[8]Plaintiffs claim that federal funds were used for relocation and for a transportation study. However, there is no dispute that actual construction was financed solely by the State.

[9]The Corps' own regulations suggest that linear crossings of waters of the United States requiring permits rarely make the entire right-of-way part of the permit area. 33 CFR Pt 325, App. C g(4)(ii).

program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including . . .(C)those requiring a Federal permit license, or approval . . ." 16 U.S.C. §470w(7), any part of the Project which requires a Corps permit constitutes a federal undertaking.[10] Here, the Corps did issue Nationwide Permits ("NWP") No. 14 and No. 33 in connection with the Project. However, the final two crossings were redesigned as clear span bridges, which do not impact the waters of the United States and, therefore, ultimately did not require a Corps permit.

While segmentation of a project merely to avoid federal jurisdiction is unlawful, *Historic Pres. Guild of Bay View v. Burnley*, 896 F.2d 985, 986 (6th Cir. 1989) (per curiam) (addressing the claim "that the highway project has been unlawfully segmented in order to avoid the federal regulations"), this Court has found no authority suggesting that redesign of a project is impermissible. Therefore, the final two, unbuilt crossings are not federal undertakings. Even if they were deemed federal undertakings, no party has argued the area of potential effects ("APE") of these crossing would extend to Plaintiffs' home.[11]

The Valley Creek Bridge presents an entirely different matter. It nearly abuts the Plaintiffs' property. If the bridge could be deemed a federal undertaking, its APE could well extend to include Plaintiffs' home. It is undisputed, however, that the Valley Creek Bridge was always designed as a clear span bridge which did not require NWP No. 14 authorization. The Court's inquiry is not complete. Construction of the Valley Creek Bridge did temporarily impact

---

[10]The first two crossings, a culvert and Bacon Creek Bridge, were both constructed under NWP No. 14, since the actual structures impact the waters of the United States. However, none of the parties argue that these crossings are so close to Plaintiffs' property that either would invoke a Section 106 process protecting the McGehee home.

[11]Therefore, it is logical that Plaintiffs may have been due a Section 106 of the NHPA process for these two crossings when they were initially authorized under NWP No. 14. On the other hand, there is no reason State Defendants could not have redesigned the crossings at an earlier point in time, thereby obviating the 106 requirement even then.

the creek and this temporary incursion required federal authorization under NWP No. 33. The Court must now consider the consequences of a temporary permit entitling Plaintiffs to the Section 106 process.

**IV**.

The NWP No. 33 does invoke the Section 106 process because it is a "federal undertaking." Consequently, the relevant agency must determine whether the activity has any potential to cause effects on historic properties. 36 CFR §800.3(a). If no potential effects are found, the process terminates. *Id.* If potential effects do exist, then Defendants must identify the appropriate SHPO and initiate consultation. 36 CFR §800.3(c). Consultation requires involving the public and other parties who are entitled to be consulting parties. 36 CFR §800.3(e).

Next, with input from the SHPO, the agency should determine the area of potential effects ("APE") and look for historic properties within the APE. 36 CFR §800.4(a)(1). The "area of potential effects means the geographic area or areas within which an undertaking may directly or indirectly cause alternations in the character or use of historic properties." 36 CFR §800.16. The goal of this step in the process is to determine whether the undertaking will affect any historic properties. 36 CFR §800.4. The agency must consider possible adverse effects on the historic property. 36 CFR §800.5. If the agency finds any adverse effects, it must attempt to resolve them. 36 CFR §800.5(d)(2). To do so, it must consider alternatives and modifications, and define any resolution in a memorandum agreement. 36 CFR §800.6.

Here, the Corps determined that the temporary crossing over Valley Creek authorized under NWP No. 33 "would have no potential to cause effects to historic properties." Thrush Decl. ¶4. This decision effectively terminated the Section 106 process. Plaintiffs challenge this

8

decision, arguing that the APE for NWP No. 33 should include all the potential effects of the bridge itself, including its necessary egress roadway. The Court must determine whether Defendants' actions violated the NHPA or were an abuse of its discretion.

NWP No. 33 authorized only a temporary crossing of limited nature and scope. The structure in question was erected only to facilitate construction activities and was dismantled and removed after the bridge was completed. It stands to reason that an area of potential effect depends on the scope of the activity. Not surprisingly, the federal regulations say, "[T]he area of potential effects is influenced by the scale and nature of an undertaking and may be different for different kinds of effects caused by the undertaking." 36 CFR §800.16(d). Here, the temporary construction activity had no potential to effect a historic property. The Corps did not abuse its discretion by concluding that a temporary structure used solely to build a bridge did not affect the McGehee's home. Even if it could be argued that the agency was required to progress further along in the 106 process, it is not an abuse of discretion for the agency to conclude that the McGehee home was not within the APE of a temporary structure.

V.

After conclusion of the Court's hearing, Plaintiffs raised or reiterated several arguments supporting their request for injunctive relief. These arguments are worthy of consideration.

Underlying many of Plaintiffs' arguments is the notion that there is a conflict between the regulations of the Corps and the Advisory Council on Historic Preservation ("ACHP") implementing Section 106 of the NHPA. Mainly, Plaintiffs suggest the Corps uses the term "permit area" in lieu of the term "area of potential effects" and interprets that term more narrowly than the ACHP interprets "area of potential effects." Given that the ACHP has

9

Congressional authorization to promulgate these rules, argues Plaintiffs, the ACHP's broader interpretation of the applicability of Section 106 of the NHPA is controlling.

While this Court recognizes the possibility of conflict between application of different terms to the same project, such conflict is not inevitable nor present here. Of course the Corps defines "permit area" differently than the definition of "area of potential effects," *see* 33 C.F.R. Pt. 325, App. C (g) and 36 C.F.R. §800.16(d), but both sets of regulations recognize that effects of an undertaking outside the footprint of a project should be considered. For instance, the Corps recognizes that the permit area of a bridge would include part of the right-of-way approaching the crossing. 33 C.F.R. Pt. 325, App. C (g)(4)(i). In fact, Plaintiffs argue that the Corps' "own regulations explicitly require the Corps to consider known historic properties outside the narrow 'permit area,'" and that the Corps failed to follow these regulations.

Another argument underlying much of Plaintiffs' position is objection to the Court's understanding that the Project is one project, which contains several federal undertakings. Plaintiffs suggest that because the Project is one, not two projects, the presence of federal undertakings within that project necessitate the application of a full 106 Process under the NHPA to Plaintiff's property. The Court finds no support for such a proposition in these circumstances. Because the Court has found that the Project is one project, all federal actions related to the project were considered in determining that the entire project was not a "federal undertaking." If the entire project is not a federal undertaking, there can be no unlawful segmentation of the project to avoid federal jurisdiction. Along these lines, in their most recent filings, Plaintiffs have suggested additional federal involvement through 16 U.S.C. §470w(7)(d), which defines an "undertaking" as including projects "subject to State or local regulation administered pursuant to

a delegation or approval by a Federal agency." While such delegation may have occurred, given the belated reliance on such activity, this activity is not extensive enough to make the entire state-funded project a federal undertaking. If such was the case, it would be nearly impossible to have any construction project that was not a federal undertaking.

Last, Plaintiffs make two further arguments worthy of mention. The Court agrees with Plaintiffs that General Condition No. 18 applies to the Valley Creek Bridge crossing via NWP No. 33 or NWP No. 14. This general condition requires consideration of historic properties through a 106 Process. The 106 Process completed and due under NWP No. 33 for Valley Creek Bridge was discussed above. For those crossings requiring NWP No. 14, Plaintiffs suggest the lack of documentation demonstrating compliance with that process necessitates the conclusion that the process was not done or incomplete. However, Plaintiffs are concerned with their property and home. As designed, Valley Creek Bridge is the crossing nearest to their property. Therefore, though NWP No. 14 was clearly applicable to some crossings within the Project, the general conditions of NWP No. 14 are not relevant to the present factual scenario.

VI.

From this analysis, the Court concludes that Plaintiffs have not shown a strong likelihood of their entitlement to the Section 106 process with respect to the Project as a whole, with respect to the Valley Creek Bridge approval or with respect to the temporary construction permit for the Valley Creek Bridge. The Corps' decision not to provide such a process in these circumstances appears correct as a matter of law and, therefore, was not an abuse of their discretion. Consequently, the Court finds no grounds upon which it might issue the requested injunctive relief.

11

For the reasons stated, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs' motion for preliminary injunction is DENIED.

cc: Counsel of Record